## (February 12, 1968)

■ In the Matter of NEW YORK PRESS ASSOCIATION, INC., et al., Appellants. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.— *Per Curiam.* Appeal from a decision of the Unemployment Insurance Appeal Board which sustained the validity of rule 12 of the Rules and Regulations of the Industrial Commissioner, as amended effective March 15, 1967 (12 NYCRR 481.1), intended to implement subdivision 3 of section 581 of the Unemployment Insurance Law (Labor Law, art. 18) authorizing joint accounts; appellants contending that the Commissioner, in promulgating the amended rule, exceeded the powers delegated to him by statute. Appellant, New York Press Association, Inc., is a trade association composed of the proprietors of weekly newspapers published in New York State, all being employers subject to the act. On behalf of its members, appellant Press Association participates in a combined program of unemployment insurance cost control and of joint accounts administered by appellant Association Services Corporation, a service organization specializing in advice, consultation and assistance to employers in unemployment insurance matters; the joint accounts being established and maintained, of course, pursuant to section 581 (subd. 3) above referred to. Subdivision 3 provides, among other things, that "two or more qualified employers engaged in the same or a related trade, occupation, profession or enterprise", as are appellant Press Association's members, "may apply to the commissioner to establish a joint account [which] * * * shall be maintained as if it constituted a single employer's account." Critical to the decision appealed from is the additional provision of subdivison 3 that, "The commmssioner shall prescribe rules and regulations for the establishment, maintenance and dissolution of joint accounts." Under the statute, the Commissioner possesses, also, the general "power to make all rules and regulations * * * as may be necessary in the administration of this article." (Unemployment Insurance Law, § 530, subd. 1.) The permissive provision for joint accounts came into the law in 1951, when individual employer experience rating in the financing of the unemployment insurance system was provided for, also for the first time. (L. 1951, ch. 645.) A joint account, as thus authorized, is established by the merger of two or more employers' accounts in a single account. Each employer in that account is assigned a rate of contribution to the unemployment insurance fund computed on the basis of the past joint experience of all members, rather than his own individual experience. The profitable utilization of a joint account program apparently depends on the facts that, although every employer's rate of contribution to the unemployment insurance fund is geared to his experience rating (factors in which include the amount of his past contributions on the one hand and the amount of the benefits paid his former employees on the other), every liable employer must pay some contribution, even though benefits have never been paid any former employee; and no employer, no matter how poor his experience, is liable to pay more than the maximum rate set forth in the statute. In the case of the employers with whom this appeal is concerned, the joint account program has resulted in substantial savings. Rule 12, which

thus proved profitable to appellants, prior to the amendment here complained of, provided that a joint account "shall be dissolved on the application" of any member. Acting upon this permissive proviso, appellant Services Corporation caused all joint accounts in which its clients participated to be dissolved at the end of each year, leaving each participant free to elect not to enter a joint account for the succeeding year, should it then appear, on the basis of the data then at hand, that his joinder therein would be disadvantageous to him. The 1967 amendment to rule 12 ended this highly valuable right of annual election by providing, in effect, that each joint account established after January 1, 1968 should continue for at least three years without dissolution; with the result, of course, and as the Commissioner stated, "that the members of the joint account would be bound by the total experience of the members, good or bad, while it is in existence." The imposition of this three-year bind on joint accounts is the object of appellants' principal attack, their contention being that the "inherent hazards" thereof will effectually dissuade employers from utilization of joint accounts and will, in effect, render nugatory the statutory provision or permission for joint accounts. Appellants attack, less forcefully, the elimination from rule 12 of the provisions that a joint account shall automatically terminate upon one member's developing a negative balance and that the joint account shall be dissolved upon one member's going out of business or otherwise ceasing to be liable for contributions. The Commissioner determined, upon the basis of a study and after a public hearing, that the intent of the statute permitting joint accounts was being frustrated because the absence of a prescribed minimum duration of such accounts made it both safe and profitable for employers whose good experience had produced account balances with surpluses sufficient to enable them to share them, without jeopardy to their own favorable contribution rates, to be joined in a joint account with employers whose past and less favorable experience had produced account balances requiring higher contribution rates. The dissolution at the year end was both the key and the safeguard to this operation, this assuring that although the less favorably rated employers had obtained a reduction in rate for the year, without increasing the rate of those already enjoying a lower rate, no member of the joint account would suffer as the result of the joint experience during that year, as dissolution left each participant free to revert to his own separate account based on his own lifetime experience or to form with others a new joint account. It is quite evident, then, that a rate thus determined upon formation of a joint account would not reflect the true experience of all the participants and might well obstruct the establishment of a representative rate generally and to that extent threaten the integrity of the fund itself. These conclusions need not be stated with complete certainty as there was no obligation on the Commissioner to demonstrate deficiencies in the prior rule as a prerequisite to an otherwise valid amendment thereof. We find without merit appellants' principal and two-pronged objection, that in formulating the amended rule the Commissioner exceeded the rule-making authority conferred upon him by section 581 (subd. 3) or, alternatively, that if, as he contends, he was granted sufficient power to frame rule 12 in its present form, that grant, absent standards or guidelines, constituted an undue and invalid delegation of legislative power. Both authority and standards for its exercise, at least adequate to sustain this relatively simple amendment, are sufficiently expressed in, and inescapably implied from the language of subdivision 3 itself, particularly when read in conjunction with the other provisions of the section and the comprehensive plan there conceived. Surely, the power to "prescribe rules and regulations for the establishment, main-

tenance and dissolution of joint accounts" encompassed the authority, in this limited area at least, to establish reasonable controls of a temporal nature with respect to both "maintenance" and "dissolution" which should permit of an adequate demonstration and determination of actual experience and thus achieve greater accuracy in the rate-making process. Thus would be effectuated the clearly defined legislative concept of a joint account system, the rule at the same time protecting the unemployment insurance fund against loss by application of rates determined without adequate basis in experience. Appellants' additional contentions follow, more or less directly, from their principal argument above discussed. In none of them do we find an adequate basis for invalidation of the amended rule. Decision affirmed, without costs. Gibson, P. J., Herlihy, Aulisi and Staley, Jr., JJ., concur in memorandum *Per Curiam*.